# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Energy Pipe & Equipment Rentals LLC | Civil Action No. 6:17-00594 |
| versus | Judge Rebecca F Doherty |
| South Oil Inc | Magistrate Judge Carol B. Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court on referral from the District Judge is a Motion To Dismiss For Lack Of Personal Jurisdiction and Venue pursuant to FRCP Rule 12(b)(2) and 12(b)(3), or alternatively, to transfer to the Southern District of Texas, Houston Division filed by Defendant South Oil Inc. ("South Oil") [Rec. Doc. 9]; and Plaintiff Energy Pipe & Equipment Rentals LLC's ("EPER") Opposition thereto [Rec. Doc. 13] as Supplemented. [Rec. Doc. 18]. For the reasons that follow, the Court will recommend that the Motion to Dismiss be Denied.

## I. Background

EPER is a limited liability company organized and existing under the state of Louisiana which sells supplies and accessories and rents well casings. South Oil is a Texas corporation incorporated under the law of the state of Texas.

EPER sold oilfield supplies and accessories and rented 10,000 feet of drill pipe from its Lafayette, Louisiana facility to South Oil on open account from October 29, 2016 through November 6, 2016 for use at the Wilmeth B-1 H Well near Dilly, Frio County, Texas. *R. 1-3, p.1*. The invoices totaling $53,920.45 for the sales and rentals are attached to EPER's State Court Petition as Exhibits A. *R. 1-3.* According to EPER, when the rented drill pipe was returned, it was inspected and determined to

have been significantly damaged. *Id. p. 6*. As a result of the damage to the drill pipe, EPER delivered two more invoices totaling $69,669.21 (attached to the State Court Petition as Exhibit C) to South Oil. *Id*. Based on all three invoices, EPER claims South Oil owes $123,589.66. *R. 1-3, Exh. A & C*.

In response to non-payment of any of its invoices, EPER made a written demand in accordance with Louisiana law for payment on March 6, 2016. *R. 1-3, Exh. D*. Since payment was never received, EPER filed this action on an open account in the 15th Judicial Court Lafayette, Louisiana. *R. 1-3*. South Oil filed a Notice of Removal to this Court on May 2, 2017, contending that the Court has diversity jurisdiction in this action pursuant to 28 U.S.C. § 1332. *R. 1*. On May 23, 2017, South Oil filed a Motion To Dismiss For Lack Of Personal Jurisdiction and Venue pursuant to FRCP Rule 12(b)(2). *R. 9*.

## II. Law and Analysis

*A. Personal Jurisdiction*

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id*. This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id*.

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant. In a diversity action, such as this one, a federal court may exercise personal jurisdiction over a defendant

to the extent permitted by the forum state's jurisdictional statute and the Due Process Clause of the Fourteenth Amendment. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). Here, these two inquiries merge into one because Louisiana's long-arm statute, LA REV. STAT. § 13:3201, permits jurisdiction coterminous with the scope of the due process clause. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

For a court's exercise of personal jurisdiction over a nonresident defendant to be consistent with Due Process, two factors must be satisfied. *Central Freight Lines Inc.*, 322 F.3d at 380 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). First, the defendant must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state.'" *Id*. Second, a court's exercise of personal jurisdiction cannot "offend traditional notions of fair play and substantial justice.'" *Central Freight Lines Inc*. at 381.

Due Process is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). This requirement ensures that a defendant will not be subject to litigation because of " 'random,' 'fortuitous,' or 'attenuated' contacts" with the forum state. *Stuart*, at 1191 (*quoting Burger King Corp. v. Rudewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)).

Minimum contacts may result in either specific or general jurisdiction. *Central Freight Lines Inc.*, 322 F.3d at 380. In this case, however, Plaintiff is asserting specific jurisdiction over Defendant. *R. 13, p. 12.* The Fifth Circuit has articulated a three-step analysis for specific jurisdiction, whereby the court is to consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*United States v Insurance Company of Pennsylvania,* 2016 WL 1718268 (W.D. La. 2016).[1]] If the plaintiff successfully establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the exercise of personal jurisdiction would be unfair or unreasonable. *Id.*

EPER asserts that this Court has specific jurisdiction over South Oil because the South Oil purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *R. 13, p. 12.* In support of this assertion, EPER submits (i) that South Oil's "request for supplies, accessories and Rental Pipe was purposefully directed to a Louisiana resident; (ii) that South Oil negotiated the actual purchase and rental of those supplies, accessories and Rental Pipe with the knowledge that it was transacting business with a Louisiana company; (iii) that South Oil accepted delivery of the supplies, accessories and Rental

---

[1] Citing *Nuovo Pignone, spA v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir. 2002)(abrogated on other grounds in Water Splash, Inc. v. Menon, 137 S.Ct. 1504 (2017) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Pipe it procured F.O.B. EPER's Lafayette, Louisiana facility and that South Oil bore all risk of loss from the time of initial shipment from EPER's Lafayette, Louisiana facility until its return to EPER; (iv) that the Rental Pipe was damaged while in South Oil's possession; (v) that EPER's injury stems from the fact that the supplies, accessories and Rental Pipe and the damage to the Rental Pipe have never been paid for; and (vi) that EPER's provision of supplies, accessories and Rental Pipe in response to South Oil's purposeful solicitation was governed by Louisiana law." *R. 13, p. 9.*

In support of its assertions, EPER submits the Affidavit of Richard Angelle, an oil & gas industry consultant residing in Lafayette, Louisiana, who states:

> 5. In the fall of 2016, I was contacted on multiple occasions on my Louisiana telephone by David Sperry ("Mr. Sperry"), who was working as an agent for South Oil, Inc. ("South Oil") at the time.
>
> 6. Mr. Sperry asked for my assistance in procuring handling tools and rental pipe for a well site near Dilley, Texas.
>
> 7. I put Mr. Sperry in touch with Energy Pipe & Equipment Rentals, LLC ("EPER"), a company owned and managed by my brother, Dean Angelle, and assisted in the procurement of a proposal for the handling tools and rental pipe that South Oil required.

R. 18-1, Exh A.

EPER also submits the Affidavit of Todd Mury (*"Mury"*), Chief Financial Officer for Energy Pipe, who states:

> 5. As indicated on EPER's Rental Invoice # 2153 (copy attached hereto as EXHIBIT 1 / also found as EXHIBIT A of the Petition), the rented Drill Pipe and Handling Tools which South Oil requested were shipped to South Oil from EPER's facility in Lafayette, Louisiana. An US$8,500.00 charge for the freight

5.

> associated with the South Oil pipe rental is shown on EPER's Rental Invoice # 2153.
>
> 6. The reverse side of EPER's Rental Invoice # 2153 contains a printed copy of EPER's Terms and Conditions (the "EPER Terms and Conditions"...
>
> 7. Per Section 5 of the EPER Terms and Conditions, South Oil accepted the Drill Pipe and Handling Tools, F.O.B. EPER's Lafayette, Louisiana facility and bore all risk of loss from the time of initial shipment of the rented Drill Pipe and Handling Tools from Louisiana to South Oil until their return to EPER.
>
> 10. In the course of EPER's provision of Drill Pipe and Handling Tools to South Oil but prior to return of the Drill Pipe and Handling Tools, I had multiple telephone conversations with David Sperry ("Mr. Sperry"), who was acting as an agent for South Oil.
>
> 11. In addition to his solicitation and acceptance of EPER's proposal to South Oil for the provision of Drill Pipe and Handling Tools, Mr. Sperry came back to EPER requesting additional tools which EPER was unable to provide.

*R. 18-1, Exh. B.*

South Oil asserts that "South Oil is a Texas corporation. South Oil does not reside in Louisiana, has not done any business in Louisiana, does not have any office or facility in Louisiana, and does not have any employees or personnel in Louisiana. The rental equipment at issue was requested in Texas, delivered in Texas, used in Texas, and returned in Texas. In short, other than EPER being located in this district, this case, like South Oil, has no connection to the Western District of Louisiana." *R. 9, p.1*. In support of its contention, South Oil offers the rental invoices and bills of lading attached to EPER's Petition as Exhibits A and C to show that the materials provided to South Oil by EPER were shipped to Dilly, Texas for use on the

6.

Wilmeth B-1H Well, in Texas. South Oil also submits the Affidavit of Mark Bush[2], who states:

> 5. The only services and materials provided to South Oil by Plaintiff EnergyPipe & Equipment Rentals, LLC ("EPER") were requested by South Oil from Texas for the Wilmeth B-l H Well, located in Dilly, Texas. The only services and material provided by EPER to South Oil were delivered by EPER to South Oil at the Wilmeth B-lH Well in Dilly, Texas. The only use by South Oil of any services or materials provided by EPER were at the Wilmeth B-l H Well in Dilly, Texas. The only services and materials provided to South Oil by EPER were later returned to EPER by SouthOil for pick-up by EPER at the Wilmeth B-1H Well in Dilly, Texas. EPER picked up the only services and materials it provided to South Oil at the Wilmeth B-l H Well in Dilly, Texas.
>
> 6. South Oil did not enter into or execute any contract or agreement with EPER in Louisiana. South Oil did not travel to or otherwise meet with EPER in Louisiana. All materials and services provided by EPER were requested by South Oil in Texas." *R. 9-2, p.2*.

Based on the affidavits submitted, the Court finds that EPER has established a prima facie case that EPER's contacts with Louisiana are sufficient to support the exercise of specific jurisdiction over it. The affidavits establish that South Oil's requests for supplies and equipment was purposefully directed at EPER - a Louisiana resident; that South Oil accepted delivery of the supplies and equipment it procured F.O.B. EPER's Lafayette, Louisiana facility and that South Oil bore all risk of loss from the time of initial shipment from EPER's Lafayette, Louisiana facility until its return to EPER; that EPER's alleged injury (nonpayment and damage to equipment) stems from the contact with South Oil's procurement of supplies and equipment; and

---

[2] Neither the Memorandum in Support of the Motion to Dismiss nor the Affidavit of Mark Bush attached *R. 9-1 & 9-2*, identify who Mark Bush is and/or why he has knowledge of Plaintiff's dealings with Defendant.

that the "contract shall be governed by the Uniform Commercial Code as adopted and construed in the State of Louisiana[3]. . ."

Thus, the burden shifts to South Oil to show that the exercise of personal jurisdiction over it would be unfair or unreasonable. A defendant can defeat jurisdiction found on minimum contacts only if it can show that litigation in the court would be "so gravely difficult or inconvenient" that it would be a "severe disadvantage" in comparison to the plaintiff. *Burger King v. Rudewicz,* 471U.S. at 478 (citations omitted). South Oil contends that it and the relevant witnesses reside in the Southern District of Texas - Houston division, but offers no additional support for the assertion that the exercise of specific jurisdiction would be unfair. Accordingly, the undersigned recommends that South Oil's Motion to Dismiss pursuant to Rule 12(b)(2) be Denied.

*B. Venue*

South Oil further argues that this Court should dismiss EPER's Petition under Fed. R. Civ. P. 12(b)(3) because venue is not proper in Louisiana. Alternatively, South Oil argues that the Court should transfer venue to the Southern District of Texas, Houston Division under 28 U.S.C. §1391(b) and §1404(a) in the interest of justice.

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may move to dismiss an action on the basis of improper venue. Fed. R. Civ. P. 12(b)(3). Once

---

[3] The Reverse side of the rental agreement contains the following provision:

16. GOVERNING LAW. This agreement shall be governed by the Uniform Commercial Code as adopted and construed in the State of Louisiana, United States of America and any other applicable Law or Statute of the State of Louisiana, United States of America notwithstanding any states choice of law to the contrary. *R. 18-1, Exh. 1.*

challenged, the burden of sustaining venue lies with the plaintiff. *Langton v. Cbeyond Commc'n, LLC,* 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003). If, as here, there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts that, taken as true, would establish venue. *Id.* The court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x. 612, 615 (5th Cir. 2007). Further, in deciding whether venue is proper, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

Under 28 U.S.C. § 1391(b), venue is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"[T]he chosen venue does not have to be the place where the most relevant events took place, but the contacts with the selected district must be substantial. Courts should not "look... to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." *Compass Tech. Servs., Inc. v. GM Networks, Ltd.*, 2014 WL 12585667, at *2 (N.D. Tex. Mar. 13, 2014)(citations omitted).

South Oil contests venue in this district because it does not reside in this district and because an insubstantial part of the events took place here. Both the complaint and the affidavits submitted by EPER, however, make clear that venue is proper here. As discussed above, South Oil's knowingly requested and/or solicited supplies, accessories and Rental Pipe from EPER through communications with representative for EPER on their Louisiana telephones. Indeed, South Oil negotiated the actual purchase and rental of those supplies, accessories and Rental Pipe with the knowledge that it was transacting business with a Louisiana company. Additionally, South Oil accepted delivery of the supplies, accessories and Rental Pipe it procured F.O.B. EPER's Lafayette, Louisiana facility and South Oil bore all risk of loss from the time of initial shipment from EPER Lafayette, Louisiana facility until its return to EPER. Further, the equipment which EPER claims was damaged by South Oil was returned to EPER and is now located in Louisiana and the economic loss for South Oil's failure to pay affects a Louisiana Company.

Thus, the undersigned finds a substantial part of the events or omissions giving rise to the claim occurred in Louisiana, and a substantial part of property that is the subject of the action is situated in Louisiana. Thus, the Court also finds venue proper in this matter under 28 U.S.C. § 1391(b).[4] Accordingly, the Court recommends Defendant's Motion to Dismiss for Improper Venue under Fed. R. Civ. P. 12(b)(3) or alternatively to transfer to the Southern District of Texas, Houston Division be denied.

---

[4] South Oil cursorily argues that, "if it be in the interest of justice," venue should be transferred pursuant to 28 U.S.C. § 1404(a). South Oil, however, presents no evidence regarding convenience of the parties and the witnesses which would justify a transfer of venue to the Southern District of Texas.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Thus done and signed this 3rd day of August, 2017 at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**